UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GARY LAMONTE | CIVIL ACTION |
| v. | 11-3079 |
| WESTERN & SOUTHERN LIFE INSURANCE CO. | SECTION "F" |

ORDER & REASONS

Before the Court are defendant's motions for summary judgment and to strike affidavits submitted by plaintiff. For the reasons that follow, the motions are GRANTED in part and DENIED in part.

Background

This is a wrongful termination lawsuit.

Gary Lamonte, a 63 year-old African American male, worked for Western and Southern Financial Group (WSFG), a life insurance and financial services company, for 15 years. From 1995 to 1996 and then from 2005 to 2010, Lamonte worked for WSFG as a sales representative. As a sales representative, Lamonte sometimes traveled to customers' homes to collect their premium payments as a convenience to them.

In January 2010, Lamonte began collecting premium payments from a customer, Allen Poche, at his home in Hahnville, Louisiana. Between January and August of 2010, Lamonte personally collected an average of $175 a month in cash from Poche. Although company policy required Lamonte to timely remit each of these payments to

1

WSFG, he failed to do so.  According to  Lamonte, he simply forgot about the payments until Mr. Poche called him in August to ask why the premiums had not been applied, at which point he checked the payment history and realized his failure to remit.  In early September, Lamonte remitted approximately $650, which he allegedly believed was the full amount of the deficiency.

On August 31, 2010, Poche called WSFG's customer service hotline to complain about the deficiency.  WSFG instituted an investigation through its audit department, which revealed that Lamonte collected and failed to remit $1,403.02 in premiums from Poche, and that a loan had been taken out on Poche's policies without his authorization.  The audit also revealed the $650 partial payment Lamonte had paid in September.

Meanwhile, Lamonte took time off on leave to undergo shoulder surgery.  WSFG approved Lamonte's absence from September 2 to December 5, 2010.  On September 20, 2010, plaintiff's supervisor, Scott Kaplan, called him to inform him of the company's investigation.  On November 4, 2010, Lamonte met with Kaplan to discuss the deficiency and to provide a written statement.  In his statement, Lamonte explained that he "forgot" to turn in the premiums, that he had tried to correct his mistake earlier but must have miscalculated what he owed, and that he would now write a check for the remaining deficiency.  Lamonte wrote a check to WSFG that day in the amount of $759.68, the total deficiency still

remaining according to the audit.

Nonetheless, WSFG decided to terminate Lamonte. As early as October 27, 2010, Human Resources Manager James Hanseman drafted a Corrective Action Recommendation outlining the details of the investigation and concluding that Lamonte should be terminated. The Vice President of Field Human Resources, Kim Chiodi, made the final decision to terminate Lamonte. Lamonte was notified of this decision in person on November 12, 2010, when he stopped by the office to pick up some andouille from a former coworker. Notably, Lamonte was still out of work on leave at that time.

Later that day, Lamonte emailed Crystal Rice, a Pension Specialist in WSFG's Benefits Department, with the following message:

> Crystal: As per out conversation today I'm giving western southern life my thirty days notice of retirement effective December 12th of this year 2010. I am selecting option 2 as per my retirement estimate dated October 9 2010 - Gary J. Lamonte.

WSFG later denied Lamonte's request for early retirement on the ground that it was made after his employment terminated.

In December 2011, Lamonte filed suit claiming violations of his rights under the Employee Retirement Income Security Act (ERISA), the Family and Medical Leave Act (FMLA), and the Consolidated Omnibus Budget Reconciliation Act (COBRA). WSFG now moves for summary judgment, and to strike two affidavits submitted by Lamonte in support of his opposition to the summary judgment

motion.

## I. Motion to Strike

Defendant moves to strike two affidavits plaintiff submits in opposition to the summary judgment motion. Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 56(e) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Under Rule 402, evidence must be relevant to be admissible, and Rule 401 defines relevance as "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Defendant urges the Court to disregard the affidavits of two former WSFG employees, Earl Owens and Shawn Madere, on the grounds that they contain statements not based on personal knowledge, conclusory opinions, and irrelevant information. Specifically, Owens and Madere say it was "well-known" throughout the office that plaintiff suffered various illnesses and planned to retire early, that to their knowledge no other WSFG employee had been terminated

under similar circumstances, and that in their opinions WSFG terminated plaintiff to avoid paying benefits. Plaintiff seeks to limit the plain text of the affidavits and maintains that Owens and Madere attest only to matters within the scope of their personal knowledge and based on their experiences as former WSFG employees. To the extent the Court finds certain plain statements contained in the affidavits are certainly not based on personal knowledge or are otherwise inadmissible, the Court will grant the motion and strike the affidavits. The affidavits patently violate Rule 56(e) and Rule 402. They offer rank hearsay and opinion testimony. A classic case of tainted evidence, no matter how plaintiff would now twist their meaning. But the grant of this motion is limited, as will be outlined below.

## II. Motion for Summary Judgment

*A.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

*B.*

1. ERISA Claim

ERISA makes it "unlawful for any person to discharge...a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan...or for

6

the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140.  To establish a prima facie case under ERISA, the plaintiff must show: (1) an adverse employment action, (2) taken to interfere with the attainment of (3) any right to which the employee is entitled.  Bodine v. Employers Cas. Co., 352 F.3d 245, 250 (5th Cir. 2003).  To make a prima facie case, the plaintiff must prove that the defendant acted with specific discriminatory intent, which may be established through direct or circumstantial evidence. Nero v. Indus. Molding Corp., 167 F.3d 921, 927-28 (5th Cir. 1999). If the plaintiff proves a prima facie case, then defendant "must articulate a non-discriminatory reason for its actions, and then the burden shifts to [the plaintiff] to prove this reason is pretext."  Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 761 (5th Cir. 1996).

    Defendant contends that plaintiff fails to prove a prima facie case of an ERISA violation.  The Court disagrees.  Plaintiff has produced sufficient circumstantial evidence, on the record now before the Court, that he was terminated just weeks before he planned to retire.  Although plaintiff did not submit his official written request for early retirement benefits until shortly after he received notice of his termination, evidence of record arguably suggests that defendant knew of plaintiff's plans to retire and might have desired to have plaintiff terminated as quickly as

possible. Summary relief is inappropriate. For example, in August 2010, plaintiff requested a Retirement Annuity Estimate, and on October 9, 2010 defendant provided him with the estimate based on a projected early retirement date of December 1, 2010. Plaintiff also produces a November 1, 2010 email from Human Resources Manager Jim Hanseman to Scott Kaplan regarding plaintiff's termination stating that "we need to resolve the matter this week." The timing of plaintiff's termination so shortly before his planned retirement presents a possible tableau of discriminatory intent. See Nero, 167 F.3d at 927-28 ("[Plaintiff's] termination followed so shortly after his claim to medical benefits that the jury could reasonably infer a retaliatory motive.").

Defendant insists that plaintiff's failure to timely remit premium payments was a legitimate, nondiscriminatory reason for his termination. Plaintiff admits he violated company policy and that his actions were grounds for termination. The issue then becomes whether, in fact, this reason was pretext. Defendant asserts plaintiff presents no objective evidence of pretext, but plaintiff maintains that his health problems and pending retirement, rather than the Poche incident, actually motivated his discharge. In support, plaintiff validly points to, among other things, that part of Earl Owen's affidavit recalling an instance when an agent was fired only after repeatedly failing to remit premiums from multiple

8

customers, after first being put on probation.[1]

The Court is persuaded that a genuine dispute regarding whether defendant's proffered reason was pretext remains. Defendant's knowledge of Lamonte's plans to retire, the timing of plaintiff's termination, and the evidence that a similarly situated employee was treated differently all preclude summary judgment.

### 2. FMLA Claim

The FMLA, 29 U.S.C. §§ 2601-54, protects employees from interference with their leave under the Act and from discrimination or retaliation for exercising their rights under the Act. Bocalbos v. Nat'l W. Life Ins. Co., 162 F.3d 379, 382 (5th Cir. 1998). The Court analyzes FMLA claims under the framework established in McDonnell Douglas. Id. at 383. According to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff must first make a prima facie case, then the burden shifts to the defendant to articulate a legitimate non-discriminatory or non-retaliatory reason for the adverse employment action, and then if the defendant satisfies that burden, the plaintiff must prove the proffered reason is just pretext. To make a prima facie case of discrimination or retaliation under the FMLA, the plaintiff must

---

[1] The Court specifically declines to strike this portion of the Owens affidavit and finds that the statement was made based on Owens' personal knowledge and competence as former WSFG supervisor. See DIRECTV, Inc. v. Budden, 420 F.3d 521, 530 (5th Cir. 2005)(where familiarity with the issue is reasonably within the affiant's "sphere of responsibility," the court can infer personal knowledge).

show that: (1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) either he was treated less favorably than a similarly situated employee who had not requested FMLA leave or that the adverse employment action was made because he requested FMLA leave. Bocalbos, 162 F.3d at 383.

Here, there is no dispute that plaintiff was protected under the FMLA and suffered an adverse employment action. Defendant does, however, contend that plaintiff fails to show on this record that he was treated less favorably than a similarly situated employee that had not requested leave or that the adverse employment action was made because plaintiff requested leave. Defendant maintains plaintiff was terminated solely based on the deficiency. Plaintiff, on the other hand, counters that defendant intentionally interfered with his right to be restored to his former position after returning from leave and both discriminated and retaliated against him for taking leave. The Court is presented with a classic fact-intensive dispute.

Again, the Court is persuaded that summary judgment is not appropriate on this record. Considering the same evidence outlined above, and that plaintiff was on medical leave at the time he was terminated, plaintiff at the least makes a prima facie case under the FMLA, and a material factual dispute remains regarding whether defendant's proffered reason is pretext.

3. <u>COBRA Claim</u>

Last, defendant contends that plaintiff's COBRA claim fails as a matter of law, and that plaintiff admits he was informed of his rights under COBRA and even participated in COBRA for several months. Plaintiff concedes as much.

Accordingly, defendant's motion to strike is GRANTED in part and DENIED in part, and its motion for summary judgment is GRANTED with respect to plaintiff's COBRA claim and DENIED with respect to plaintiff's ERISA and FMLA claims, consistent with this Order and Reasons.

New Orleans, Louisiana, January 30, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE